592 S.E.2d 322

**Jane SMITH, Respondent,**

v.

**John DOE, Appellant.**

No. 3716.

Court of Appeals of South Carolina.

Heard Nov. 5, 2003.

Decided Dec. 15, 2003.

Rehearing Denied Feb. 2, 2004.

H. Wayne Floyd, of West Columbia, for Appellant.

John D. Elliott, of Columbia, for Respondent.

HEARN, C.J.:

Jane Smith brought this action against John Doe to establish paternity and award child support for her mentally disabled adult child, Danielle.[1]  A paternity test established that Doe was Danielle's father, and the family court ordered him to pay $91.00 a week in child support.  Doe appeals, arguing: (1) the statute of limitations barred the paternity action, and (2) in the event the action is not time barred, the amount of child support awarded was excessive.  We affirm.

---

1. The names of the parties and the child have been changed to protect their identities.

## FACTS

Smith and Doe met in 1964 while Doe was working at a nightclub. Although Doe was married at the time, the two had an affair, and Danielle was born in July of 1965. Doe was aware of Danielle, but he never attempted to have a relationship with her nor did he offer any type of financial support. Smith had previously never sought support because she did not want to embarrass Doe; however, now that she has retired, she has become worried about Danielle's future. Because of this concern, Smith approached Doe and asked that he recognize Danielle as his daughter so that Danielle could receive Doe's social security benefits when he dies. According to Smith, Doe "laughed and said, 'I don't think so.'"

As a result of that conversation, Smith filed an action against Doe seeking a declaration of paternity and child support. Doe denied paternity and moved to dismiss the action as being untimely and barred by the applicable statute of limitations. A temporary hearing was held before the family court. The family court denied Doe's motion to dismiss and ordered the parties to undergo paternity testing. The paternity test established Doe as Danielle's father, and a final hearing on the merits was held.

At the hearing, Smith testified that Danielle has the mental capacity of a six-year-old and is unable to read, perform math, drive, or cook. She further testified that Danielle cannot be alone for more than a few hours at a time, and as a result Smith spends approximately $35.00 a week for childcare.

Doe again argued the action was barred by the statute of limitations, the doctrine of laches, and the theory of equitable estoppel.[2] The family court found that Doe's paternity of Danielle had been established and ordered him to begin paying child support. The family court ordered Doe to pay $91.00 per week in child support, $1,500.00 in attorney fees, and an arrearage of $6,188.00 accrued during the pendency of litigation.

Doe filed a motion to reconsider, challenging, among other things, the amount of child support awarded on the grounds

2. Doe does not appeal the family court's findings regarding the doctrine of laches and equitable estoppel.

that the family court failed to consider Danielle's social security benefits and her income from employment. It is undisputed that Danielle receives approximately $275.00 per month in social security disability income and between $250 to $500 a month working at a part-time job created for her through the Babcock Center. The family court denied Doe's motion and specifically noted that the court considered Danielle's income in determining the amount of child support. This appeal followed.

## STANDARD OF REVIEW

■ "On appeal from an order of the family court, this court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence." *Hopkins v. Hopkins*, 343 S.C. 301, 304, 540 S.E.2d 454, 456 (S.C.2000). Despite our broad scope of review, this court is not required to disregard the family court's findings nor ignore the fact that the family court judge, "who saw and heard the witnesses, was in a better position to evaluate their testimony." *Bowers v. Bowers*, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct.App.2002).

## LAW/ANALYSIS

I.   Applicability of a Statute of Limitations

■    Doe argues the family court erred in failing to find the paternity suit was barred by the statute of limitations. Doe asserts that once Danielle reached the age of majority (eighteen), the general statute of limitations began running for the commencement of the paternity action. *See* S.C.Code Ann. 15-3-530 (Supp.2002). We disagree.

The question of whether the statute of limitations would bar a paternity action by or on behalf of an adult child seeking child support has not been addressed by our courts. Although other jurisdictions have addressed the applicability of the statute of limitations to paternity actions, their review is specific to their own state statutes, most of which specifically set forth a limitations period for bringing the action. *See e.g.*, 23 PA. Cons.Stat. Ann. § 4343(b) (2003) (requiring that a paternity action be instituted within eighteen years of the child's birth); *Padilla v. Montano*, 116 N.M. 398, 862 P.2d

1257 (Ct.App.1993) (discussing the statute of limitations for establishing paternity in states that have adopted the Uniform Parentage Act); *Oregon ex rel. Adult and Family Servs. Div. v. Keusink,* 69 Or.App. 324, 684 P.2d 1239 (1984) (finding that Oregon imposes no statutory time bar to a paternity action except in the context of probate proceedings); *See generally* 14 C.J.S. *Child* § 81 (2003) ("A paternity proceeding brought by or on behalf of the child may be governed by a statute of limitations of at least the duration of the child's minority, or by a general statute of limitations which is tolled during the infancy of the child, . . . or has no time bar.").

Turning to our own statutory scheme, we find no statute of limitations peculiar to paternity actions. S.C.Code Ann. § 20–7–952 (1985). Section 20–7–952 provides that a paternity action may be brought by a child or the natural mother of a child and expressly states that the word "child" is not limited to a person under the age of eighteen.[3]

Relying on *South Carolina Department of Social Services v. Lowman,* 269 S.C. 41, 236 S.E.2d 194 (1977), Doe asserts that the general three-year statute of limitations should govern paternity actions. *See* S.C.Code Ann. § 15–3–530 (Supp.2002). In *Lowman* the Department of Social Services brought an action against Lowman seeking support for a seven-year-old child born out of wedlock. The court found that the general statute of limitations was applicable to an action involving child support, but noted that the duty of a parent to support his or her child is a "continuing obligation." *Id.* at 48, 236 S.E.2d at 196. The supreme court remanded the case to the family court for a determination as to whether Lowman was the child's father, and held that, if paternity was established, Lowman could be required to make future child support

---

3. The only other reference to paternity actions appears in the probate code. Section 62–2–109(2)(ii) of the South Carolina Code (Supp.2002) provides that for purposes of intestate succession, a person born out of wedlock is a man's child if:

[P]aternity is established by an adjudication commenced before the death of the father or within the later of eight months after the death of the father or six months after the initial appointment of a personal representative of his estate and, if after his death, by clear and convincing proof.

The probate code does not provide a statute of limitations for determining paternity.

payments. However, because of the six-year statute of limitations,[4] Lowman could not be required to reimburse D.S.S. for support accrued more than six years prior to the commencement of the action.

Because *Lowman* addresses only the applicability of the general statute of limitations to an action for retroactive child support, we do not find its holding applicable to this action, especially in light of clear statutory language allowing paternity actions by and on behalf of children older than eighteen years of age. *See* § 20–7–952. Instead, we turn to the recent decision of *Riggs v. Riggs*, 353 S.C. 230, 578 S.E.2d 3 (2003), for guidance.

In *Riggs*, mother commenced an action in 1998 seeking child support for the parties' twenty-three-year-old daughter. The child, who still lived in the home, suffered from a genetic disease that had not been diagnosed until she was twenty years old. Father argued the family court could not order child support because section 20–7–420(17) of the South Carolina Code provided only for the "continuation" of child support for a disabled child over the age of eighteen. Because the child's disability had not been diagnosed until his child support obligation had already been terminated, father argued that any order requiring him to pay child support would not be a "continuation" of support within the terms of the statute. The supreme court disagreed, holding that "the family court is vested with jurisdiction to order child support for an unemancipated disabled adult child." *Id.* at 235, 578 S.E.2d at 5. The court further noted that it believed the legislature intended for "a non-custodial parent [to] share the burden of supporting a child who cannot be emancipated because of a disability that arose before majority but was diagnosed only after the child turned eighteen." *Id.*

In this case, Danielle was born with a mental disability that prevents her from becoming emancipated. If she were a legitimate child, her father would have a continuing obligation to support her as long as she remained disabled. Thus, if we were to impose the general statute of limitations to Danielle's

---

4. At the time of the *Lowman* case, the general statue of limitations was six years; the statute has since decreased to three years. *See* § 15–3–530.

paternity action, we would in effect create a procedural barrier to the rights of illegitimate children to receive child support when an action on their behalf had not been brought within a certain amount of time. In light of our statutory and case law which require non-custodial parents to support their disabled child beyond the child's eighteenth birthday, it makes no logical sense to impose a time bar on an illegitimate child's prerequisite action to establish paternity. *See* S.C.Code Ann. § 20–7–90 (1976) (requiring parents to provide support for their legitimate *and* illegitimate children); § 20–7–952 (allowing paternity actions to be brought by or on behalf of a child and expressly stating that the term "child" is not limited to someone under the age of eighteen); *Riggs*, 353 S.C. at 235, 578 S.E.2d at 5 ("[T]he family court is vested with jurisdiction to order child support for an unemancipated disabled adult child."). Thus, in the absence of a clear, statutory directive setting forth the legislature's intent to impose a statute of limitations to unemancipated adult children's paternity actions, we decline to apply a statute of limitations to the present action.

## II. Amount of Child Support Awarded

■ Doe next argues the family court abused its discretion by using the Child Support Guidelines to determine the amount of his child support obligation. Specifically, Doe contends the family court failed to take into account the "significant income" Danielle received through her part-time job and social security disability benefits. We find no abuse of discretion.

■ Child support awards are addressed to the sound discretion of the family court and, absent an abuse of discretion, will not be disturbed on appeal. *Mitchell v. Mitchell*, 283 S.C. 87, 92, 320 S.E.2d 706, 710 (1984). "An abuse of discretion occurs when the court is controlled by some error of law or where the order, based upon the findings of fact, is without evidentiary support." *Engle v. Engle*, 343 S.C. 444, 448 449, 539 S.E.2d 712, 714 (Ct.App.2000).

In its order denying rehearing, the family court noted that it took into consideration Danielle's social security benefits and her modest income. The family court explained that it

used the guidelines in order to take into account the parties' respective incomes, and it noted, as an additional sustaining ground, that it did not impute further income to Doe despite his extensive deductions for business travel. Because the record indicates the family court considered Danielle's income and social security benefits, we find no abuse of discretion in the amount of child support awarded.

## CONCLUSION

The family court did not err in allowing Smith to institute a paternity action on behalf of her thirty-five-year-old child, who is unemancipated due to a disability that arose during her minority. Furthermore, the child support award of $91.00 a week was not an abuse of discretion. The order of the family court is

**AFFIRMED.**

HOWARD and KITTREDGE, JJ., concur.