664 S.E.2d 442

**Brendalee ABLES, Petitioner,**

v.

**Michael GLADDEN, Respondent.**

No. 26518.

Supreme Court of South Carolina.

Submitted April 1, 2008.

Refiled July 14, 2008.

Holly Palmer Beeson, of Baker, Ravenel & Bender, of Columbia, for Petitioner.

Newton I. Howle, Jr., of Darlington, for Respondent.

Justice WALLER:

In 2005, petitioner Brendalee Ables filed the instant action against her former husband, respondent Michael Gladden, seeking reimbursement of medical expenses, health insurance premiums, educational expenses, work-related child care expenses, and a retroactive increase in child support. The family court awarded petitioner $305.69 in medical expenses, and a $300 reimbursement for a health insurance credit given to respondent between 2003 and 2005 when he had not actually maintained insurance coverage for the child. However, the family court denied petitioner's remaining requests primarily on the basis of untimeliness. The Court of Appeals affirmed, finding that the family court properly denied petitioner's claims based on laches. *Ables v. Gladden*, Op. No.2006–UP–420 (S.C. Ct.App. filed Dec. 19, 2006). This Court granted petitioner's request for a writ of certiorari to review the Court of Appeals' decision.[1]

## FACTS

In 1992, petitioner and respondent were divorced in Tokyo, Japan. The Japanese divorce decree awarded petitioner sole custody of the couple's daughter, who was born on March 29, 1987. Respondent was ordered to pay child support in the amount of $842 per month from June 1992 until August 1992; $667 per month from September 1992 until respondent separated from the military; and $378 per month thereafter. By 1993, respondent and petitioner had both returned to the United States. Respondent moved to North Carolina, and petitioner moved to South Carolina. Petitioner enrolled the child in private school in South Carolina.[2]

---

1. Respondent has not filed a brief with the Court, and also did not file a brief at the Court of Appeals. He was, however, represented by private counsel at the family court level.

2. Petitioner testified that she initially enrolled her daughter in private school because her daughter was used to a small student-teacher ratio

In 1994, a North Carolina court issued an order[3] which provided that respondent pay $46 per week in child support and provide health insurance coverage for the child when "available at a reasonable cost." The order stated that health insurance "is defined to be reasonable in cost if it is employment related or other group insurance." In addition, the order provided that if respondent failed to obtain health insurance coverage, he would be liable for any medical expenses incurred.

In 1997, petitioner sent a certified letter to respondent (who at that time lived in South Carolina) requesting payment for child support, out-of-pocket medical costs, daycare expenses, and educational expenses. Respondent signed for the letter but did not respond.

In 1998, the South Carolina Department of Social Services (DSS), on behalf of petitioner, filed a Notice of Registration of the Japanese Divorce Decree in the South Carolina family court. The family court, however, ruled the 1994 North Carolina Order was the proper order to register in South Carolina. The court ordered respondent to pay the $46 per week, plus another $10 per week for arrears.

Several other orders relating to the enforcement of child support were thereafter issued by the family court, including orders which increased and decreased the amount of support, set a weekly amount for arrearages, readjusted the method of payment for medical expenses, and garnished respondent's wages.

Specifically regarding medical expenses, the 2002 family court order stated the following:

> [Petitioner] provides health insurance at no cost. [Petitioner] will be responsible for the first $250.00 of non-covered medical expenses per calendar year. Additional expenses in excess of $250.00 will be prorated [between petitioner and respondent:] 73% by [respondent,] 27% by [petitioner].

from her Department of Defense schools in Japan, and the public schools had "much larger" classrooms.

3. The order is entitled "Voluntary Support Agreement and Approval by Court." Petitioner is listed as the "Person Enforcing Support Obligation."

[Petitioner] will provide proof of expenses within 10 days of being incurred. [Respondent] will have 30 days to pay the costs.

In 2005, respondent filed a motion to terminate ongoing support based upon the child reaching the age of majority. At all times between 1998 and March 2005, petitioner had been represented by attorneys from DSS. At the March 30, 2005 hearing, petitioner raised issues regarding reimbursement for medical expenses, daycare expenses, and health insurance coverage. In its April 8, 2005 order, the family court found these issues were not properly raised because they were "not within the assignment or duties of" DSS. Nevertheless, the family court "reserved" the resolution of those issues "for a future hearing on her own," i.e., in a separate action brought by petitioner. The family court terminated ongoing child support as of March 29, 2005, because of the child turning 18, but ordered respondent to continue paying the $6,812.31 in arrears at a weekly rate of $101.79, until paid in full.

In June 2005, petitioner filed the instant action against respondent which specifically requested, *inter alia*: (1) a retroactive increase in child support for the period of time from 1998 until 2002 based on respondent's failure to report increases in salary; (2) reimbursement for various medical expenses, health insurance premiums, and work-related daycare expenses; and (3) increased child support from 2003 through 2005 based on an improper credit given to respondent for health care premiums.[4]

A hearing was held on October 18, 2005, at which petitioner claimed she was owed payments for various un-reimbursed medical, daycare and educational expenses incurred during the child's minority. With the exception of one medical expense for a root canal and an adjustment because of the health care credit improperly given to respondent, the family court denied as untimely petitioner's various requests for retroactive payments.

---

4. We note that in petitioner's complaint, she asserted that she "consented to [respondent's] motion to file a new action to address the unresolved issues in the April 8, 2005 Order as well as other matters requested by [petitioner] in order to provide [respondent] with an opportunity to respond." Respondent admitted this allegation in his answer.

On appeal, the Court of Appeals held that "the record supports the family court's decision that laches" barred petitioner's claims. Specifically, the Court of Appeals noted petitioner "failed to bring any formal adjudicatory proceeding against [respondent] until 2005, despite believing [respondent] was responsible for expenses and support since 1994." The Court of Appeals further found that petitioner's delay was unreasonable, in part because petitioner and respondent were "involved in multiple court proceedings between 1999 and 2005 regarding issues surrounding [respondent's] child support payments." Finally, the Court of Appeals found respondent would be prejudiced by petitioner's request for the "large amount" of $26,995.39.

## ISSUES

1. In light of this Court's opinion in *Strickland v. Strickland,* 375 S.C. 76, 650 S.E.2d 465 (2007), is laches no longer a viable defense when there is a court order for child support?

2. Did the Court of Appeals err in finding petitioner's claims for childcare and private school expenses were barred by the doctrine of laches?

3. Did the Court of Appeals err in not awarding petitioner $660 for the improper credit given to respondent for health insurance premiums?

## DISCUSSION

### Standard of Review

In appeals from the family court, this Court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *E.g., Wooten v. Wooten,* 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005). This broad scope of review does not, however, require the appellate court to disregard the findings of the family court. *Cherry v. Thomasson,* 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

### 1. *Strickland v. Strickland*

In *Strickland v. Strickland,* 375 S.C. 76, 650 S.E.2d 465 (2007), we held that laches is not a defense to a claim for

the enforcement of an alimony award. Petitioner argues that the ruling in *Strickland* logically extends to the enforcement of a child support order. We agree.[5]

Laches is an equitable doctrine defined as "neglect for an unreasonable and unexplained length of time, under circumstances affording opportunity for diligence, to do what in law should have been done." *Hallums v. Hallums*, 296 S.C. 195, 198, 371 S.E.2d 525, 527 (1988). "Whether a claim is barred by laches is to be determined in light of facts of each case, taking into consideration whether the delay has worked injury, prejudice, or disadvantage to the other party; delay alone in assertion of a right does not constitute laches." *Id.* at 198–99, 371 S.E.2d at 527–28.

In *Hallums*, this Court found that the doctrine of laches barred the mother's claim for retroactive child support. In that case, however, there had been no adjudicated divorce and no court-ordered child support. The mother first raised the issue of child support as a counterclaim, some 22 years after the father had first petitioned for a divorce, and at a time after the child had reached the age of majority.

In *Strickland,* however, the Court had before it a case which involved a family court order awarding alimony. The Court adopted the reasoning of *Jefferson Pilot Life Ins. Co. v. Gum,* 302 S.C. 8, 393 S.E.2d 180 (1990), which found where a court order fixed an obligation, the doctrine of laches could not be applied to undo the obligation. Exporting the *Jefferson Pilot* analysis to the alimony context, the *Strickland* Court stated the following:

> In our opinion, this Court's reasoning in *Jefferson Pilot* is equally applicable to a family court award of alimony. Although the equitable nature of laches generally comports with the family court's equitable jurisdiction in determining support and maintenance between former spouses, the concept of "inexcusable delay" in the laches defense is inconsistent with the judicial authority inherent in a court order. Because court orders awarding support and maintenance do not have an expiration date, allowing a party to avoid compliance based solely on the oblique notion of delay only

---

5. We recognize the Court of Appeals was decided in December 2006, some eight months **before** this Court's decision in *Strickland*.

serves to undermine the authority of the court. *See also Stephens v. Hamrick*, [86 N.C.App. 556, 358 S.E.2d 547, 549 (1987)] (holding that the doctrine of laches does not bar the enforcement of a court order for child support because "the obligation to furnish support is continuous [and therefore] a lapse of time will not be a bar to commencement of an enforcement action."). Accordingly, we hold that laches is not a defense to a claim for the enforcement of an alimony award.

*Strickland*, 375 S.C. at 83–84, 650 S.E.2d at 469–70.

We agree with petitioner that the reasoning in *Strickland* and *Jefferson Pilot* should apply with equal force to cases involving a child support order. In *Strickland*, we cited a North Carolina case which involved a North Carolina mother trying to enforce a South Carolina child support order. *See Stephens v. Hamrick, supra.* The North Carolina Court of Appeals clearly held that because the child support obligation is continuous, the doctrine of laches does not apply to bar enforcement of a child support order. *Id.*; *see also South Carolina Dep't of Soc. Servs. v. Lowman*, 269 S.C. 41, 48, 236 S.E.2d 194, 196 (1977) (the duty of child support is a continuing obligation).

Accordingly, the doctrine of laches does not apply in the instant case to petitioner's claims for retroactive child support, health insurance premiums, and medical expenses.[6]

Although the *Strickland* Court disallowed laches in cases involving an alimony order, it nevertheless held that equitable estoppel could apply. The Court explained that equitable estoppel "appropriately balances principles of equity and judicial authority when the underlying facts of a case call into question the equity of enforcing a court order." *Strickland*, 375 S.C. at 84, 650 S.E.2d at 470. The Court outlined the various elements of the estoppel claim as follows:

The elements of equitable estoppel as related to the party being estopped are: (1) conduct which amounts to a false

---

6. Petitioner acknowledges that because her claims for daycare and educational expenses were never the subject of a prior court order, the *Strickland* analysis does not apply to those requests. She instead argues the Court of Appeals erred in applying the laches doctrine to those claims. *See* issue 2, *infra.*

representation, or conduct which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention that such conduct shall be acted upon by the other party; and (3) actual or constructive knowledge of the real facts. The party asserting estoppel must show: (1) lack of knowledge, and the means of knowledge, of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change of position in reliance on the conduct of the party being estopped.

*Id.* at 84–85, 650 S.E.2d at 470.

█ Petitioner asserts there is no evidence she should be equitably estopped from enforcing respondent's court-ordered obligations regarding health insurance premiums, medical expenses, and retroactive child support. We agree.

As evidenced by the numerous orders in the record, petitioner consistently pursued respondent for child support and medical expenses. Her claims go at least as far back as 1997 when she sent a certified letter to respondent demanding various expenses. The 1994 North Carolina order, which made respondent responsible for child support and health insurance/medical expenses, was registered in South Carolina in 1998. The record also reveals: (1) a 2002 order which set child support at $102 per week, plus $20 per week for arrears, and also set out the above-discussed formula for respondent's obligations regarding medical expenses; (2) a 2003 order which reduced the child support obligation to $62 per week, plus the $20 for arrears; and (3) a 2004 order which increased child support to $81.79 per week, plus $20 for arrears.

The evidence therefore is undeniable petitioner never made any assurances or representations to respondent that he was not responsible for the court-ordered obligations regarding child support and medical expenses. Thus, petitioner is not equitably estopped from asserting her claims regarding retroactive child support, health insurance, and medical expenses.

## A. Retroactive Child Support

"The decision to order retroactive support rests within the sound discretion of the family court and should not be re-

versed absent an abuse of discretion by the family court." *Thornton v. Thornton*, 328 S.C. 96, 115, 492 S.E.2d 86, 96 (1997). Furthermore, the family court is "empowered to modify child support **upon a proper showing** of a change in either the child's needs or the supporting parent's financial ability." *Henderson v. Henderson*, 298 S.C. 190, 196, 379 S.E.2d 125, 129 (1989) (emphasis added). The party seeking the modification has the burden to show changed circumstances. *Upchurch v. Upchurch*, 367 S.C. 16, 26, 624 S.E.2d 643, 648 (2006).

■ Here, the family court relied on laches and therefore did not make a decision on the facts. In our opinion, the evidence presented by petitioner at the hearing simply does not support her claim for retroactive child support, and therefore, we affirm the denial of retroactive child support. *Wooten v. Wooten, supra* (in appeals from the family court, this Court may find facts in accordance with its own view of the preponderance of the evidence).

Petitioner testified at the hearing that respondent was making at least ten percent more than his reported $910 per month between 1994 and 1998, and that when the child support was increased in 2002, his "income had significantly increased over the last time [she] received [a] child support increase." However, our review of the record reveals that these are assumptions made by petitioner which were not supported by any specific evidence.[7] Therefore, we find petitioner failed to carry her burden of proof for a retroactive increase in child support. *Cf. Upchurch v. Upchurch*, 367 S.C. at 26, 624 S.E.2d at 648 ("general testimony regarding increased expenses, without specific evidentiary support, is an insufficient showing of changed circumstances").

### B. Health Insurance Premiums and Medical Expenses

Petitioner also claims she is entitled to $8,035.14 for unreimbursed health insurance premiums and out-of-pocket

---

7. Indeed, petitioner specifically stated the following at the hearing: "I'm asking the court to require [respondent] to provide the income information." She asserted she had "personal knowledge" regarding his income between March 2001 and May 2002, but presented no documentary proof of her claim.

medical expenses. It appears from the documentation provided by petitioner at the hearing that this sum primarily represents health care insurance premiums that were paid from 1994 though 2005. The only exception appears to be a dental expense related to a root canal for $668.75.

■ The family court ordered respondent to pay petitioner $305.69 of the root canal expense based on the formula set out in the 2002 order.[8] Curiously, petitioner has not, in any of the subsequent filings, even mentioned this award. Moreover, respondent has not submitted any filings at either appellate level, so this award is the law of the case. *E.g., Ex parte Morris*, 367 S.C. 56, 65, 624 S.E.2d 649, 653–54 (2006) (an unappealed ruling is the law of the case).

■ Thus, the only remaining issue is whether petitioner is entitled to be reimbursed for monies spent for health insurance premiums. We find she is not. The 1994 North Carolina order specified that respondent was to provide health insurance coverage for the child when "available at a reasonable cost," and defined that to mean health insurance that "is employment related or other group insurance." Significantly, however, this order also provided that if respondent failed to obtain health insurance coverage, he would be liable for any medical expenses incurred. Given that there was never a court order in place that absolutely **required** respondent to pay for health insurance, petitioner cannot now claim she must be reimbursed for those costs.

In sum, we hold the doctrine of laches does not apply to petitioner's claims for retroactive child support and medical related expenses; therefore, it was error to bar these claims on that basis. Moreover, we find petitioner is not equitably estopped from pursuing these claims. However, on the merits, petitioner failed to carry her burden of proof that she was entitled to either a retroactive increase in child support or reimbursement for health care premiums paid between 1994 and 2005. Thus, the Court of Appeals' decision upholding the family court's denial of these particular claims is affirmed as modified.

---

**8.** Petitioner was responsible for the first $250, and then respondent was responsible for 73% of the remainder.

## 2. Childcare and Private School Expenses

■ Petitioner next argues that as to her additional claims for childcare and private school expenses, the Court of Appeals erred in finding, on the merits, that laches bars these claims.[9]

Laches may be established if there is an unreasonable and unexplained delay in asserting a legal claim. *Hallums v. Hallums,* 296 S.C. at 198–99, 371 S.E.2d at 527–28. In order to prove the affirmative defense of laches, the burden is on respondent to establish (1) delay, (2) unreasonable delay, and (3) prejudice. *Id.* Additionally, "[t]he inquiry into the applicability of laches is highly fact-specific and each case must be judged by its own merits." *Emery v. Smith,* 361 S.C. 207, 216, 603 S.E.2d 598, 602 (Ct.App.2004).

■ Petitioner asserts that her alleged delay in pursuing these claims was neither unreasonable nor unexplained. According to petitioner, she believed that DSS was seeking these expenses on her behalf throughout the time it was acting as her attorney for the child support enforcement actions. Upon learning from the family court at the March 30, 2005, hearing that she was unable to present these requests, petitioner retained private counsel and filed the instant action on June 23, 2005.[10] Thus, petitioner maintains there was no delay, or at the very least, not an unexplained or unreasonable delay.

We agree. Although it appears these claims were not formally asserted in the family court prior to 2005, the record shows that at least as far back as 1997, petitioner was attempting to collect childcare and educational expenses. *Cf. South Carolina Dep't of Soc. Servs. v. Holden,* 319 S.C. 72, 459 S.E.2d 846 (1995) (where mother continually asked father to pay child support, no unreasonable delay established for laches). Moreover, the family court's April 2005 order reflects that petitioner believed DSS was in a capacity to pursue these

---

9. Unlike basic child support and medical expenses, the costs for childcare and private school were never the subject of a court order. Therefore, the *Strickland* analysis is not directly applicable, and a laches defense may apply.

10. As recounted in the Facts section, *supra,* the family court's April 18, 2005 order specifically stated that petitioner's other issues were "reserved" and would be addressed at a future hearing.

claims for her, when it fact that agency was not. Thus, we reverse the Court of Appeals' holding that petitioner unreasonably delayed bringing a legal claim for the past childcare and educational expenses.

On the merits, the family court did not make any factual findings regarding petitioner's claims for expenses related to childcare and private school. *See* Rule 26(a), SCRFC ("An order or judgment pursuant to an adjudication in a domestic relations case shall set forth the specific findings of fact and conclusions of law to support the court's decision."). As to the claim for private school expenses, the family court denied the request based on laches **and** the legal conclusion that "absent extremely unusual circumstances, this Court does not require non-custodial parents to pay for private school costs."

On the issue of private school tuition, we find our cases turn on the facts of each case, not necessarily "extremely unusual circumstances." *See, e.g., Rabon v. Rabon,* 288 S.C. 338, 342 S.E.2d 605 (1986) (where the Court ordered an increase in child support to cover private school costs after mother moved from Florence to Columbia and decided to enroll the four children at Heathwood Hall). Thus, the family court should evaluate this claim on the facts presented.

 Accordingly, a remand is necessary on the issue of whether petitioner is entitled to be reimbursed for any portion of the childcare and private school expenses incurred during the child's minority.

## 3. Health Insurance Premium Credit

At the family court level, petitioner alleged respondent was credited for paying health insurance premiums between 2003 and 2005 when in fact he did not actually provide coverage for the child. The family court therefore found the following:

> According to the South Carolina Child Support Guidelines, if the credit for the insurance premium is removed for the period of time in question, [respondent] should have been paying $67.00 a week rather than the $62 he was actually paying. Sixty payments were made during this period, and [respondent] will therefore be required to reimburse [petitioner] $300.00.

Petitioner contends, however, that because respondent's child support obligation was adjusted by $44 per month, she should have received $11 back for the 60 weekly payments, for a total of $660.00.

We find the family court correctly calculated the amount. Although the child support worksheet shows that respondent was indeed credited with $44 for a health insurance premium, it does not necessarily follow that his total obligation was thereby reduced by the same amount. The Court of Appeals correctly noted that petitioner's claim did not at all reference the appropriate child support guidelines. *See* S.C. Ann. Regs. §§ 114–4710 & 114–4720 (Supp.2007).

Because the family court correctly addressed this issue and the Court of Appeals affirmed, there is no error on this issue.

### CONCLUSION

We affirm in part, as modified, the denial of petitioner's claims regarding retroactive child support, health insurance, and medical expenses. As to petitioner's claims for private school costs and childcare, we reverse the decision that these claims are barred by laches and remand to the family court for a resolution on the merits. Finally, we affirm the Court of Appeals' holding that the family correctly calculated the award resulting from respondent being improperly credited with paying health insurance premiums between 2003 and 2005.

**AFFIRMED IN PART AS MODIFIED; REVERSED IN PART AND REMANDED.**

TOAL, C.J., and MOORE, J., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES concurring:

I concur in the result reached by the majority on the issue of child support, but I write separately because as I stated in *Strickland,* the defense of laches should not be precluded simply because of the existence of a continuing court order. Thus, I would affirm the family court's finding that laches bars petitioner's claims for health insurance premiums, medical expenses, and childcare/school expenses.

I agree with the majority's conclusion that petitioner did not meet her burden in proving she was entitled to retroactive child support. However, I would hold that laches and other equitable defenses may prevent a parent from collecting retroactive child support, even when interposed against an existing court order. I recognize that these equitable defenses should not apply, absent extraordinary circumstances, when enforcement of child support is sought on behalf of the minor child. *See Garris v. Cook*, 278 S.C. 622, 300 S.E.2d 483 (1983) (a parent's wrongful act should not prejudice the minor child's right to support).

I would affirm the Court of Appeals' opinion in its entirety.